UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

RICHARD SUNDAY IFILL, 88-A-9838,

                              Plaintiff,

        v.                                                   **DECISION AND ORDER**
                                                             03-CV-355S

GLENN GOORD, et al.

                              Defendants.

1.      In this case, Plaintiff Richard Sunday Ifill, a former inmate at the Five Points

Correctional Facility ("Five Points"), alleges that he was denied adequate medical

treatment, subjected to cruel and unusual punishment, retaliated against for exercising his

right to litigate, deprived of his personal property without due process, punished based on

fabricated reports, and repeatedly denied access to the courts in violation of his rights

under the First, Fourth, Fifth, Eighth and Fourteenth Amendments.   Plaintiff seeks

declaratory relief and damages pursuant to 42 U.S.C. §§ 1983, 1985, and 1986.

2.      Plaintiff, acting *pro se*, commenced this action on May 1, 2003, by filing a

Complaint in the United States District Court for the Western District of New York.  On or

about July 23, 2004, counsel was appointed for Plaintiff.  An Amended Complaint was filed

on January 31, 2005.  Currently before this Court is Defendants' Motion to Dismiss, which

was filed on February 14, 2005.[1]

----

[1]This Motion is brought on behalf of Defendants Glenn Goord, Thomas Poole, William Lape, Dana
Aidala, Lester Wright, M.D., _____ Goodman, M.D., Robert Macomber, P.A., Thindy Thorton, P.A., Jeff
Scranton, Elsie Bower or Bowen, Joseph Bellinger, Paul Conroy, Shawn Van Horn, Stephen Gould, Richard
Cioffa, _____ Reed, Stephen Woodward, Peter Ficchi, Nancy O'Connor, R.N., _____ Yorge or Yorke, Ph.D.,
_____ Goodman, R.N., and Gary Coleman ("Defendants").  Where indicated, the full name of these Defendants
are unknown.  Upon information and belief, the remaining or proposed Defendants Battisti, Walker, M.D., and
Contrello have not been served and/or have not requested representation from the Office of the Attorney General of
the State of New York.  (Defs' Mem., p. 1, n. 1).  In support of their Motion, Defendants filed a memorandum of
law, a declaration and a reply memorandum of law.  Plaintiff filed a memorandum of law and an affidavit in
opposition to Defendants' Motion.

3.     For the limited purpose of resolving Defendants' Motion to Dismiss, this Court assumes the truth of the following factual allegations contained in Plaintiff's Complaint.  See Hosp. Bldg. Co. v. Trustees of Rex Hosp., 425 U.S. 738, 740, 96 S. Ct. 1848, 1850, 48 L. Ed. 2d 338 (1976); see also Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton Coll., 128 F.3d 59, 63 (2d Cir. 1997).  Plaintiff, a prisoner with the New York State Department of Correctional Services ("DOCS"), suffers from "multiple serious diseases and ailments" and is confined to a wheelchair.  (Compl., ¶ 34).  Despite Plaintiff's medical condition, he was transferred to Five Points, where Defendants failed to provide him with adequate medical care, and caused him to suffer "extreme pain and prolonged suffering."  (Compl., ¶¶ 35-38).  For example, medical personnel reduced Plaintiff's pain medication without a valid medical reason and contrary to physicians' orders, confiscated his wheelchair without cause, and denied his requests for a back brace, a cell assistant and an egg crate mattress.[2]  (Compl., ¶¶ 41-49).  Moreover, Plaintiff's requests to be transferred to the regional medical unit were denied, his complaints regarding the prison conditions and his health were ignored, and his grievances and personal appeals were summarily denied.  (Compl., ¶¶ 39-40, 43-44).

Plaintiff also alleges that Defendants falsely charged him with misbehavior, found him guilty of such misbehavior absent a basis for doing so and had him removed from his elected position on the "inmate liaison committee."  (Compl., ¶¶ 51-52).  Furthermore, Defendants placed Plaintiff in the special housing unit ("SHU") on numerous occasions "due to Plaintiff's history of litigating against [DOCS] and its staff," and based on false

---

[2] Through a previous Motion for a Temporary Restraining Order, filed on July 9, 2003, Plaintiff sought an order directing Defendants to provide him with an egg crate mattress and a back brace during the pendency of this lawsuit.  Plaintiff's Motion was denied by this Court on October 6, 2003.

charges of which "Plaintiff was always found guilty, with or without cause." (Compl., ¶¶ 54-56).   Plaintiff's cell was often ransacked, his personal property and legal materials confiscated, stolen or destroyed, and his religious and personal property damaged or destroyed.  (Compl., ¶¶ 58-60).

Due to the numerous "arbitrary and illegal periods of confinement" in SHU, Plaintiff suffered multiple mental breakdowns and attempted suicide on several different occasions, resulting in periods of confinement in the mental health unit ("MHU").  (Compl., ¶¶ 59, 61-63).   While in the MHU, Plaintiff was placed in a strip cell and "warehoused without medical treatment," or toiletries, and forced to crawl around on his hands and knees and to urinate on himself.  (Compl., ¶¶ 62 & 64).  The lights in the halls and the cells of the MHU were kept on 24 hours a day, depriving Plaintiff of adequate sleep and causing his medical condition to worsen.  (Compl., ¶ 65).  Moreover, while housed in MHU, Plaintiff was denied access to his legal materials and "was unable to pursue the legal matters with which he was involved."  (Comp., ¶¶ 64 & 67).   The grievances that were filed by the Plaintiff regarding these issues were "destroyed, tabled, miscoded, denied or never heard," and none were adequately investigated.  (Compl., ¶ 68).

Plaintiff also alleges that Defendants repeatedly censored, confiscated and delayed the delivery of his incoming mail, and denied him access to legal supplies, including paper, envelopes and legal materials, "in an attempt to punish [him] and prevent litigation against them."  (Compl., ¶¶ 77-79).  In a "final act of retaliation," Defendants transferred Plaintiff to Attica Correctional Facility ("Attica"), which is not wheelchair accessible.  (Compl., ¶¶ 80 & 81).

4.      Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of a Complaint for "failure to state a claim upon which relief can be granted."  FED. R. CIV.

P. 12(b)(6).  A court may dismiss an action under this rule if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which will entitle him to relief." Cohen v. Koenig, 25 F.3d 1168, 1172 (2d Cir.1994) (quoting Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102, 2 L. Ed. 2d 80 (1957)).  When a court decides a motion under Rule 12(b)(6), all well-pleaded factual allegations contained in the Complaint are assumed true and construed in the non-moving party's favor.  See Still v. DeBuono, 101 F.3d 888, 891 (2d Cir. 1996).  However, legal conclusions, deductions, or opinions are not afforded the same presumption of truthfulness.  See Ying Jing Gan v. City of New York, 996 F.2d 522, 534 (2d Cir. 1993); see also United States v. Bonanno Organized Crime Family of La Cosa Nostra, 879 F.2d 20, 27 (2d Cir. 1989).  On such a motion, "[t]he issue is not whether a plaintiff will or might ultimately prevail on her claim, but whether she is entitled to offer evidence in support of the allegations in the complaint."  Hamilton Chapter, 128 F.3d at 62 (citation omitted).

## **ALLEGATIONS**

5.     Plaintiff asserts six causes of action against Defendants.  In his first and second causes of action, Plaintiff alleges that Defendants were deliberately indifferent to his medical needs, caused him wanton and unnecessary infliction of pain, and thereby subjected him to cruel and unusual punishment.  Plaintiff's third cause of action alleges that Defendants transferred him to an institution that was not wheelchair accessible in retaliation for exercising his right to litigate.  Plaintiff claims in his fourth cause of action that Defendants repeatedly searched, confiscated, damaged, or destroyed his property, both personal and legal.  Plaintiff's fifth cause of action alleges that Defendants fabricated reports and failed to meaningfully review his grievances.  In his sixth and final cause of

action, Plaintiff claims that his legal mail was searched and in some cases, destroyed or lost.

Defendants argue that Plaintiff has failed to allege personal involvement on the part of Defendants Goord, Wright and Poole as required by 42 U.S.C. § 1983, such that dismissal of the Amended Complaint as to these Defendants is necessary.  Moreover, Defendants argue that Plaintiff has failed to state a cause of action for retaliation, or for deprivation of due process with respect to his personal property or fabricated misbehavior reports, such that the third, fourth, fifth and sixth causes of action must be dismissed.[3] This Court will address each of Defendants' arguments in turn.

## DISCUSSION

6.    Section 1983 of the Civil Rights Act provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . .  subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. § 1983.  Under 42 U.S.C. § 1983, an individual whose constitutional rights have been violated by a person acting under color of state law may file a lawsuit in federal court seeking compensation.  See Richardson v. McKnight, 521 U.S. 399, 403, 117 S. Ct. 2100, 2103, 138 L. Ed. 2d 540 (1997).  In order to prevail in a Section 1983 case, the plaintiff "must prove that the challenged conduct was attributable at least in part to a person acting under color of state law, and that the conduct

---

[3]Defendants have not moved to dismiss Plaintiff's first and second causes of action.  Accordingly, this Court need not address these claims at this juncture.

deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." Wimmer v. Suffolk County Police Dep't, 176 F.3d 125, 137 (2d Cir. 1999).

A plaintiff asserting a claim under 42 U.S.C. § 1983 must also demonstrate that each defendant was personally involved in violating his or her constitutionally protected rights. Wright v. Smith, 21 F.3d 496, 501 (2d Cir.1994). "It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (internal quotations and citations omitted); McKinnon v. Patterson, 568 F.2d 930, 934 (2d Cir. 1977); Richardson v. Coughlin, 101 F. Supp. 2d 127, 129 (W.D.N.Y. 2000). Accordingly, a supervisor cannot be held liable under Section 1983 based solely upon a theory of *respondeat superior*. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-695, 98 S. Ct. 2018, 2035-2038, 56 L. Ed. 2d 611 (1978); see also Hernandez v. Keane, 341 F.3d 137, 145 (2d Cir. 2003) (noting that "supervisor liability in a § 1983 action depends on a showing of some personal responsibility, and cannot rest on *respondeat superior*"). "[A]bsent personal participation in the constitutional violation, supervisor liability in § 1983 actions may be imposed only where there is some culpable action or inaction by the supervisor in the training, supervision or control of his subordinates." Lewis v. Meloni, 949 F. Supp. 158, 163 (W.D.N.Y. 1996) (citing Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996)); see also Johnson v. Newburgh Enlarged Sch. Dist., 239 F.3d 246, 254 (2d Cir. 2001).

Specifically, the personal involvement of a supervisory defendant may be established where: (1) the defendant participated directly in the alleged constitutional

6

violation; (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong; (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or practice; (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring. Colon, 58 F.3d at 873 (quoting Williams v. Smith, 781 F.2d 319, 323-24 (2d Cir.1986).

In the instant case, Defendants contend that the Amended Complaint does not allege personal involvement on the part of Defendants Goord, Poole and Wright. Generally, the Amended Complaint states that Defendant Glenn Goord, as the Commissioner of DOCS, and Thomas Poole, the Superintendent of Five Points, were "aware of and acquiesced in the unconstitutional restrictions and conditions of Plaintiff's confinement." (Compl., ¶¶ 5, 6). Likewise, Plaintiff claims that Defendant Lester Wright, M.D., the Deputy Commissioner and Chief Medical Officer for DOCS "was aware of, and acquiesced in, the inadequate medical care that was provided to Plaintiff at Five Points. . . ." (Compl., ¶ 9). However, such conclusory allegations are insufficient to establish the personal involvement of a supervisory defendant under Section 1983. See Colon, 58 F.3d at 873. Rather, to impose supervisory liability, a prisoner must allege that the official had actual or constructive notice of the unconstitutional practices and demonstrated gross negligence or deliberate indifference by failing to act. Merriwether v. Coughlin, 879 F.2d 1037, 1048 (2d Cir. 1989).

A review of the Amended Complaint reveals no factual allegations demonstrating

7

the personal involvement of Defendants Goord, Poole and Wright.  Plaintiff contends that his requests to be transferred to the regional medical unit were denied, his complaints regarding the prison conditions and his health were ignored, and his grievances and personal appeals were summarily denied.  (Compl., ¶¶ 39-40, 43-44).  This Court presumes that Plaintiff communicated his complaints to Goord and Poole through letters or through the prison grievance procedure.  For purposes of Section 1983, however, personal involvement cannot be established based on the receipt of a letter or grievance. Woods v. Goord, No. 01 Civ. 3255(SAS), 2002 WL 731691, at *7 (S.D.N.Y. Apr. 23, 2002) (collecting cases).  For example, the United States District Court for the Southern District of New York has explicitly held that "correspondence to and from [DOCS Commissioner] Goord does not demonstrate [his] personal involvement." Swindell v. Supple, No. 02 Civ. 3182RWS, 2005 WL 267725, at *10 (S.D.N.Y. Feb. 3, 2005).  Likewise, "allegations that an official ignored a prisoner's letter" are insufficient to impose liability under Section 1983. Atkins v. County of Orange, 251 F. Supp. 2d 1225, 1233 (S.D.N.Y. 2003).

In his Amended Complaint, Plaintiff suggests that Defendants, including Goord and Poole, transferred him to Attica, a facility which is not wheelchair accessible, in a final act of retaliation for litigating against DOCS.  (Compl., ¶¶ 80 & 81).  However, for the reasons as discussed below, Plaintiff has failed to allege sufficient facts to state a cause of action for retaliation.  Supra, ¶ 7.  For substantially the same reasons, this Court finds that Plaintiff's conclusory allegations do not establish the personal involvement of Defendants Goord and Poole.  With respect to DOCS' Chief Medical Officer Wright, the Amended Complaint does not set forth any facts which suggest that this Defendant ever examined or diagnosed Plaintiff, was grossly negligent in supervising those that did, or was

deliberately indifferent to Plaintiff's rights.  Swindell, 2005 WL 267725, at *10 (citing Hernandez v. Keane, 341 F.3d 137, 145 (2d Cir. 2003)).  Rather, Plaintiff makes only vague and conclusory assertions as to Defendant Wright, which do not demonstrate his personal involvement for purposes of Section 1983.  Accordingly, this Court will dismiss the Amended Complaint in its entirety against Defendants Goord, Poole, and Wright, and they will be terminated as parties to this case.

7.      In his third cause of action, Plaintiff alleges that he was retaliated against for exercising his right to litigate.  Specifically, Plaintiff claims that Defendants deprived him of appropriate medical care, placed him in SHU, and transferred him to a correctional facility that was not wheelchair accessible.  "An act in retaliation for the exercise of a constitutional right is actionable under section 1983 even if the act when taken for different reasons would have been proper."  Franco v. Kelly, 854 F.2d 584, 588 (2d Cir. 1988); Arce v. Walker, 58 F. Supp. 2d 39, 46 (W.D.N.Y. 1999).  The Second Circuit has cautioned courts to "examine prisoners' claims of retaliation with skepticism and particular care" given "the ease with which claims of retaliation may be fabricated."  Colon, 58 F.3d at 872.  Recognizing the possibilities for abuse with respect to retaliation claims, the Circuit has insisted "on a higher level of detail in pleading them."  Gill v. Mooney, 824 F.2d 192, 194 (2d Cir. 1987).  Consistent with this reasoning, "a complaint of retaliation that is 'wholly conclusory' can be dismissed on the pleadings alone."  Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996) (internal citations omitted).

To prevail on a retaliation claim, Plaintiff bears the initial burden of showing:

that the conduct at issue was constitutionally protected and that the protected conduct was a substantial or motivating factor in the prison officials' decision to discipline the plaintiff.   [Mount Healthy Sch. Dist. v.

9

> Doyle, 429 U.S. 274, 287, 97 S. Ct. 568, 576, 50 L. Ed. 2d 471 (1977)].  If
> the plaintiff carries that burden, the defendants must show by a
> preponderance of the evidence that they would have disciplined the plaintiff
> "even in the absence of the protected conduct." Thus, if taken for both
> proper and improper reasons, state action may be upheld if the action would
> have been taken based on the proper reasons alone.

Graham, 89 F.3d at 79 (citing Lowrance v. Achtyl, 20 F.3d 529, 534-35 (2d Cir. 1994)).

A court may infer an improper or retaliatory motive from: (1) the temporal proximity of the

filing to the grievance and the disciplinary action; (2) the inmate's prior good disciplinary

record; (3) vindication at a hearing on the matter; and (4) statements by the defendant

regarding his motive for disciplining the plaintiff.  Colon, 58 F.3d at 872-73.

In the instant case, Plaintiff has failed to allege any facts in support of his retaliation

claim which would entitle him to relief.  Plaintiff has not alleged what specific protected

activity he engaged in, the dates of such activity, the temporal proximity between the

constitutionally protected activity and the alleged retaliation, or any details regarding his

commitment to SHU or his transfer to Attica.  Rather, the Amended Complaint sets forth

wholly conclusory statements, which are not afforded a presumption of truthfulness.  Ying

Jing Gan, 996 F.2d at 534.  By way of example, the Amended Complaint states that "on

numerous occasions, defendants, including Mr. Aidala, placed Plaintiff in the special

housing unit . . . due to Plaintiff's history of litigating against the Department of

Correctional Services and its staff."  (Compl., ¶ 54).  Vague allegations of retaliation such

as this do not satisfy the requirement for a "higher level of detail" insisted upon by the

Second Circuit.  Gill, 824 F.2d at 194.  Accordingly, Plaintiff's retaliation claim will be

dismissed as against all Defendants.

8.      In his fourth cause of action, Plaintiff alleges that "his property, both

personal and legal, was repeatedly searched, confiscated, damaged or destroyed, by the defendants, without due process." (Compl., ¶ 104).   However, "a claim for the loss of property does not lie in federal court if the state courts offer an adequate remedy for such a deprivation." Leitzsey v. Coombe, 998 F. Supp. 282, 289 (W.D.N.Y. 1998) (citing Hudson v. Palmer, 468 U.S. 517, 533, 104 S. Ct. 3194, 3203 - 3204, 82 L. Ed. 2d 393 (1984)).   In New York State, Section 9 of New York Court of Claims Act permits an inmate to pursue a claim for deprivation of property against the State of New York in the New York Court of Claims and therefore provides a remedy for such claims. Leitzsey, 998 F. Supp. at 289-90; see also Gadson v. Goord, No. 96 Civ. 7544(SS), 1997 WL 714878, at *7 (S.D.N.Y. November 17, 1997).   Therefore, Plaintiff may not pursue his deprivation of property claim in this Court.[4]

9.      Plaintiff's fifth cause of action alleges that Defendants fabricated reports against him and deprived him of "the ability to obtain a meaningful review of his grievances." (Compl., ¶ 109).   However, "a prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report." Boddie v. Schneider, 105 F.3d 857, 862 (2d Cir. 1997) (citing Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986).   Rather, a plaintiff must sufficiently assert something more; for example, that allegations of misbehavior were fabricated in retaliation against the prisoner for exercising a constitutional right. Boddie, 105 F.3d at 862 (citing Franco, 854 F.2d at 588-90).   As previously noted herein, Plaintiff's allegations of retaliation are conclusory and unsupported by any facts.   As such, they cannot serve to elevate Plaintiff's fabrication

---

[4]      For the reasons set forth below, supra, ¶ 10, this Court finds that Plaintiff has failed to state a constitutional claim that confiscation of his "legal property" deprived him of reasonable access to the courts. See e.g., Gadson, 1997 WL 714878, at *7.

claim to the level of a constitutional violation.

A prisoner does have a due process right to a hearing before he may be deprived of a liberty interest on the basis of a misbehavior report.  Boddie, 105 F.3d at 862; Freeman, 808 F.2d at 951.  However, a prisoner asserting that he was denied due process at a disciplinary hearing must first "identify a liberty interest protected by the Due Process Clause of which he was deprived."  Torres v. Mazzuca, 246 F. Supp. 2d 334, 340 (S.D.N.Y. 2003) (quoting Williams v. Goord, 111 F. Supp. 2d 280, 288 (S.D.N.Y. 2000)).

The deprivation of a state-created liberty interest, on the other hand, does not rise to the level of a constitutional violation unless the punishment amounts to an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Torres, 246 F. Supp. 2d at 340 (quoting Sandin v. Conner, 515 U.S. 472, 484, 115 S. Ct. 2293, 2300, 132 L. Ed. 2d 418 (1995)).  Even if a prisoner can demonstrate atypicality, he must thereafter establish that "the state has granted inmates, by regulation or statute, a protected liberty interest in remaining free from that confinement or restraint."  Frazier v. Coughlin, 81 F.3d 313, 317 (2d Cir. 1996).  Only if the prisoner meets these two elements will the court address "whether that liberty interest occurred without due process of law." Torres, 246 F. Supp. 2d at 340 (quoting Sealey v. Giltner, 116 F.3d 47, 51 (2d Cir. 1997)).

"Prison grievance procedures do not confer any substantive right upon an inmate requiring the procedural protections envisioned by the Fourteenth Amendment."  Torres, 246 F. Supp. 2d at 342; see also Mahotep v. Deluca, 3 F. Supp. 2d 385, 390 n.3 (W.D.N.Y. 1998); Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir.1993); Adams v. Rice, 40 F.3d 72, 75 (4th Cir.1994).  Moreover, Plaintiff has not alleged any facts suggesting that he was subjected to an atypical hardship based on the alleged fabricated reports, or

establishing the fundamental insufficiency of the disciplinary hearings based on those reports. Specifically, Plaintiff claims that Defendants falsely charged him with misbehavior to remove him from the inmate liaison committee and to remand him "on numerous occasions" to SHU. Significantly, Plaintiff does not allege that his confinement was unusually long or the circumstances extraordinary, such that it would be considered "atypical and significant." See, e.g., Williams, 111 F. Supp. 2d at 289 (holding that 75 day confinement was not an "atypical or significant" or "onerous" burden under Sandin); see also Colon v. Howard, 215 F.3d 227, 231 (2d Cir. 2000) (holding that plaintiff's confinement of 101 days in normal SHU conditions was constitutional).

The facts contained in the Amended Complaint suggest that Plaintiff was afforded a disciplinary hearing in each instance of alleged misbehavior, and in fact, that his removal from the inmate liaison committee was subsequently reversed through some review process. As previously noted herein, a prisoner does not have a protected liberty interest in "having his grievances investigated to the level of thoroughness that he desires" and "cannot assert a due process claim as to such failures." Torres, 246 F. Supp. 2d at 342. Rather, "the breadth of any [grievance] investigation remains in the discretion of the officers conducting the investigation." Id. Moreover, Plaintiff's vague allegation that he "was always found guilty, with or without cause, of the violation in question" does not state a factual basis for a due process claim. (Compl., ¶ 56). It is well settled that "[a] complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss." Leon v. Murphy, 988 F.2d 303, 311 (2d Cir. 1993) (citing Sommer v. Dixon, 709 F.2d 173, 175 (2d Cir. 1997)).

13

Accordingly, Plaintiff's due process claim will be dismissed as against all Defendants. Moreover, given that the only factual allegations raised in the Amended Complaint against Defendants Belliner and Coleman relate to this claim, these Defendants will be terminated as parties to this case.

10.     In his sixth cause of action, Plaintiff claims that he was deprived of access to the courts when Defendants searched, and in some cases, destroyed or lost his legal mail. "Prisoners have a constitutional right of access to the courts," which is implicated when prison authorities "actively interfer[e] with inmates' attempts to prepare legal documents." Arce, 58 F. Supp. 2d at 43 (quoting Lewis v. Casey, 518 U.S. 343, 346, 350, 116 S. Ct. 2174, 2177, 135 L. Ed. 2d 606 (1996)).  To prevail on an access to the courts claim, however, a plaintiff must establish "relevant actual injury." Lewis, 518 U.S. at 351. That is, a prisoner "must go one step further and demonstrate that [prison practices] hindered his efforts to pursue a legal claim."  Id.

Although "the taking of an inmate's papers will often interfere with [his] right of access to the courts," Goff v. Nix, 113 F.3d 887, 892 (8th Cir. 1997), a court cannot presume harm absent some showing of impaired access.  Arce, 58 F. Supp. 2d at 44 (citing Oliver v. Fauver, 118 F.3d 175, 178 (3d Cir. 1997)).  Moreover, a prisoner's conclusory assertion that he suffered prejudice is insufficient to establish an access to court claim.  Arce, 58 F. Supp. 2d at 44 (citing Boswell v. Mayer, 169 F.3d 384, 387 (6th Cir. 1999)).  Rather, he must designate specific facts in support of his claim, for example, "that a complaint he prepared was dismissed for failure to satisfy some technical requirement  which, because of the deficiencies in the prison's legal assistance facilities,

14

he could not have known," or "that he suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by the inadequacies of the law library that he was unable to even file a complaint." <u>Lewis</u>, 581 U.S. at 351.  Even where a prisoner can demonstrate actual injury, prison authorities may be justified in restricting access to the courts if such restriction is "reasonably related to legitimate penological interests." <u>Id.</u>

In the instant case, Plaintiff contends that while in MHU after attempting to commit suicide, he "was unable to pursue the legal matters with which he was involved." (<u>Compl.</u>, ¶ 67).  However, Plaintiff does not allege that Defendants prevented him from filing a claim or responding to a dispositive motion, or caused him to miss a deadline or otherwise fail to comply with an order from any court.  In essence, he makes no allegation that Defendants' conduct resulted in an actual injury, which would implicate his constitutional right of access to the courts.  <u>Lewis</u>, 518 U.S. at 351.  Accordingly, Plaintiff's access to court claim must be dismissed as against all Defendants.

11.     Accordingly, for the foregoing reasons, Defendants' Motion to Dismiss will be granted, consistent with the foregoing decision.

IT HEREBY IS ORDERED that Defendants' Motion to Dismiss the Amended Complaint (Docket No. 66) is GRANTED.

FURTHER that the third, fourth, fifth, and sixth causes of action alleging retaliation, loss of property, deprivation of due process and of access to the courts, respectively, are DISMISSED.

FURTHER that Defendants Goord, Poole, Wright, Belliner and Coleman shall be terminated as parties to this case.

FURTHER that Plaintiff may proceed with his first and second causes of action as

against the remaining Defendants.


      SO ORDERED.

Dated:      August 30, 2005
            Buffalo, New York

                             /s/William M. Skretny
                            WILLIAM M. SKRETNY
                     United States District Judge