UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

RICHARD SUNDAY IFILL,

        Plaintiff,

v.                 **DECISION AND ORDER**
                  03-CV-355S

GLENN GOORD, et al.,

        Defendants.

## I. INTRODUCTION

Plaintiff Richard Sunday Ifill is again before this Court on a motion for summary judgment to determine whether there are genuine issues of material fact in dispute as to his remaining claim that he was forced to sleep in a freezing cold cell without adequate clothing in violation of the Eighth Amendment.[1] Plaintiff seeks declaratory relief and damages pursuant to 42 U.S.C. §§ 1983, 1985, and 1986. Presently before this Court is Defendants' Motion for Summary Judgment.[2] For the following reasons, Defendants' motion is granted in part and denied in part.

---

[1] In a previous Decision and Order this Court granted summary judgment against Plaintiff's other Eighth Amendment claims, including denial of medical treatment, conditions of confinement, and denial of a wheelchair. (See Docket No. 114.) The Court of Appeals for the Second Circuit vacated this Court's decision as to Plaintiff's claim that "he was placed in a freezing cell without adequate clothing," observing that this Court had failed to address that claim. (Docket No. 120.) Accordingly, only Plaintiff's cold cell claim remains to be resolved.

[2] In support of their Motion for Summary Judgment, Defendants filed the following documents: the Declaration of Jeffrey Minnerly, a statement of facts, a memorandum of law, and a reply memorandum. (Docket Nos. 148, 149, 151, 156.) In opposition, Plaintiff filed an affidavit with supporting exhibits, and a memorandum of law. (Docket Nos. 152, 153.)

## II.  BACKGROUND

**A.   Facts**

The Court assumes the parties' familiarity with the Amended Complaints' underlying facts.[3]  As to Plaintiff's cold cell claim, the relevant facts are as follows.  While an inmate at the Five Points Correctional Facility ("Five Points") Plaintiff was transferred to a Special Housing Unit ("SHU") on October 21, 2002.  (Ifill Aff. ¶ 6, June 20, 2011, Docket No. 152.)  Defendant Sergeant Stephen Woodward, with the assistance of two or three other correctional officers, then removed all of Plaintiff's clothing and forced him to sleep on the cell floor.  (Ifill Aff. ¶ 6; Ifill Dep. 24:5-12, Mar. 23, 2010, Docket No. 145.)  Plaintiff alleges that the floor was filthy and freezing cold as a result of cold air coming through open windows, air vents, and the recreation yard door, attached to his cell.  (Ifill Aff. ¶ 6.)  Although the following day one of the windows was closed, Plaintiff remained subjected to these conditions for the duration of his stay in SHU from October 21, 2002 to January 7, 2003.  (Ifill Aff. ¶¶ 6, 14.)  Allegedly as a result of a suicide attempt, Plaintiff was transferred to the Mental Health Unit, where he was again forced to sleep naked on a freezing floor for one month.  (Ifill Aff. ¶¶ 10, 11.)  Following Plaintiff's return to SHU, Defendants would, on a daily basis, open the recreation yard door and allow rain water and snow to enter Plaintiff's cell, as well as, three times per week, activate the showers and flood Plaintiff's cell.  (Ifill Aff. ¶ 12.)  Plaintiff alleges that various other SHU inmates reported similar complaints.  (Ifill Aff. ¶ 13.)

---

[3]    A detailed description of the events pertaining to Plaintiff's various claims may be found in this Court's Decision and Order dated September 27, 2007.  (See Docket No. 114.)

2

**B.     Procedural History**

As with the underlying facts of this case, this Court assumes familiarity with this case's extensive and complicated procedural history. Relevant to Plaintiff's cold cell claim, Plaintiff's most recent Amended Complaint was filed on January 31, 2005. (Docket No. 63). On September 1, 2005, this Court granted Defendants' Motion to Dismiss the third, fourth, fifth, and sixth causes of action from Plaintiff's Complaint.  (Docket No. 75). Plaintiff's first and second causes of action were dismissed on Defendant's Motion for Summary Judgment on September 27, 2007. (Docket No. 114.) The Court of Appeals for the Second Circuit , by summary order, vacated and remanded this Court's decision as to Plaintiff's claim that he was placed in a freezing cell without adequate clothing while at Five Points. (Docket No. 120.) On May 11, 2011, Defendants moved for summary judgement on this last claim.  (Docket No. 81).  For the following reasons, Defendant's motion is granted in part and denied in part.

### III.  DISCUSSION

**A.     Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is warranted where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A "genuine issue" exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986); Ford v. Reynolds, 316 F.3d 351, 354

(2d Cir. 2003).  A fact is "material" if it "might affect the outcome of the suit under governing law." Anderson, 477 U.S. at 248.  In a case where the non-moving party bears the ultimate burden of proof at trial, the movant may satisfy its burden by pointing to the absence of evidence supporting an essential element of the non-moving party's claim. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

At this stage, the function of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.  Thus, summary judgment is not appropriate if "there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party." Ford, 316 F.3d at 354.

When deciding a motion for summary judgment, a court must view the evidence and the inferences drawn from the evidence "in the light most favorable to the party opposing the motion." Addickes v. S.H. Kress & Co., 398 U.S. 144, 158-59, 90 S. Ct.1598, 1609, 26 L. Ed. 2d 142 (1970).  However, the party against whom summary judgment is sought "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." Caldarola v. Calabrese, 298 F.3d 156, 160 (2d Cir. 2002). "Only when reasonable minds could not differ as to the import of evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).

**B.     Cold Cell Claim**

The Eighth Amendment to the United States Constitution applies to the States through the Fourteenth Amendment, and "prohibits the infliction of 'cruel and unusual

punishments' on those convicted of crimes." Wilson v. Seiter, 501 U.S. 294, 297, 11 S.Ct. 2321, 2323, 115 L. Ed. 2d 271 (1991); U.S. Const. amend. VIII. As such, prison conditions and the treatment prisoners receive while incarcerated are subject to scrutiny under the Eighth Amendment. See DeShaney v. Winnebago Cnty Dep't of Social Servs., 489 U.S. 189, 199-200, 109 S. Ct. 998, 1005-1006, 103 L. Ed. 2d 249 (1989). Claims for inhumane conditions of confinement under the Eighth Amendment must demonstrate "(1) a deprivation that is 'objectively, sufficiently serious' that he was denied 'the minimal civilized measure of life's necessities,' and (2) a 'sufficiently culpable state of mind' on the part of the defendant official, such as deliberate indifference to inmate health or safety." Gaston v. Coughlin, 249 F.3d 156, 164 (2d Cir. 2001) (quoting Farmer v. Brennan, 511 U.S. 825, 834, 11 S. Ct. 1970, 128 L. Ed. 2d 811 (1994)).

The first prong is an objective requirement under which a prisoner must demonstrate that "he has been denied basic human needs, such as food, clothing, shelter, medical care, and reasonable safety, or has been exposed to conditions that pose an unreasonable risk of serious damage to his future health." Williams v. Carbello, 666 F. Supp. 2d 373, 378 (S.D.N.Y. 2009) (citing Phelps v. Kapnolas, 308 F.3d 180, 185 (2d Cir. 2002)). In particular, freezing temperatures can constitute the basis of an inhumane conditions of confinement claim. See Gaston, 249 F.3d at 164, Stevens v. City of New York, No. 10 Civ. 5455(PGG), 2011 WL 3251501, at *3 (S.D.N.Y. July 22, 2011) (listing cases).

The second, subjective, prong requires a prisoner to plead facts showing that defendant acted with a "sufficiently culpable state of mind." Phelps, 308 F.3d at 185. As to this prong, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."

Farmer, 511 U.S. at 834.  This requires a plaintiff to show that a defendant acted with the equivalent of criminal reckless indifference.  Id. at 839-40.

**C.     Plaintiff's Request for Further Discovery**

At the outset, this Court must address Plaintiff's argument that Defendants' motion should be denied because Plaintiff "has not had a full opportunity to conduct discovery in this case to completely flush out the allegations in his complaint." (Pl.'s Mem. 14, June 6, 2011, Docket No. 153.)  The only evidence Plaintiff has submitted in opposition to Defendants' motion is an affidavit that describes the conditions in which he was kept.  The affidavit does not, however, go into great detail as to which Defendants committed what acts.  Plaintiffs deposition also does not provide any significant clarification, admittedly in part because Plaintiff continually conflated his cold cell claim with other claims that have already been dismissed.  Plaintiff claims this lack of specificity is because he has not had "the opportunity to conduct any discovery in this case to determine the extent of each defendant's knowledge." (Ifill Aff. ¶ 16.)  His opposing memorandum further states that Plaintiff needs "at the very least, the opportunity to conduct document discovery and the depositions of the named defendants in this action." (Pl.'s Mem. 11 n. 2.)  By way of explanation for why he had not conducted discovery, Plaintiff states that as he originally was a *pro se* plaintiff he lacked the necessary experience to depose defendants or conduct discovery, and that only now has he been assigned counsel whom is willing to conduct discovery on his behalf.  (Ifill Aff. ¶ 17.)

A party opposing summary judgment on the ground that it requires further discovery must submit an affidavit showing "(1) what facts are sought . . . and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of

6

material fact, (3) what effort the affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts." Feingold v. Hankin, 91 Fed. Appx. 176, 178 (2d Cir. 2004) (summary order) (quoting Gurary v. Winehouse, 190 F.3d 37, 43 (2d Cir. 1999)). Failure to do so results in the denial of further discovery. Trebor Sportswear Co. v. Limited Stores, Inc., 865 F.2d 506, 511 (2d Cir. 1989). Moreover, a court may refuse to allow additional discovery where the request is based on mere speculation as to what might be discovered. Nat'l Union Fire Ins. Co. v. Stroh Cos., Inc., 265 F.3d 97, 117 (2d Cir. 2001).

Plaintiff's affidavit shows that he seeks to learn the extent of the Defendants' knowledge and conduct directly relating to his cold cell claim. Plaintiff seeks documentary discovery as well as to depose Defendants. This Court agrees that certain testimony by Defendants could create a genuine issue of material fact. In particular, testimony by various corrections officers ("CO") may reveal further details concerning the state and temperature of Plaintiff's cell, particularly in light of Plaintiff's alleged lack of clothing. Testimony by other inmates could further clarify this matter. Finally, depositions of those Defendants who ordered Plaintiff's transfer to SHU may reveal their awareness, or lack thereof, of the state of Plaintiff's conditions. Such information is material for determining whether Plaintiff has met both the objective and subjective prongs of a conditions of confinement claim, and may materially aid Plaintiff in defending against Defendants' motion for summary judgment. See Javier H. v. Garcia-Botello, No. 02-CV-523S, 2011 WL 4344045, at *7 (W.D.N.Y. Sept. 14, 2011) (denying motion for summary judgment where plaintiffs sought further discovery concerning defendants awareness of illegal activity).

Having shown that the facts to be obtained would aid in defending against Defendants' motion, the key inquiry becomes whether Plaintiff sought this information from

Defendants and why these efforts were unsuccessful.  Although Plaintiff claims that his initial *pro se* status limited his ability to engage in discovery, this Court notes that Plaintiff's request for appointment of counsel was granted as far back as July 22, 2004.  (Docket No. 58.)  Plaintiff's Amended Complaint followed on January 31, 2005.  (Docket No. 63.)  A scheduling order was issued for discovery to be completed by August 31, 2005, which was extended to February 16, 2006.  (Docket No. 77.)  Defendants first motion for summary judgment was filed on May 1, 2006.  (Docket No. 81.)  It was not until August 24, 2006, long after discovery had closed, that Plaintiff requested the appointment of new counsel. (Docket No. 104.)  This Court denied that request, finding that Plaintiff's counsel had diligently prosecuted Plaintiff's suit, including filing an amended complaint, conducting discovery, and opposing Defendants' motions to dismiss and for summary judgment. (Docket No. 105.)

However, in May 2008, the Appellate Court for the Second Circuit provided Plaintiff with new counsel for purposes of appealing this Court's Decision and Order dated September 27, 2007 with respect to his cold cell claim.  (Docket No. 120.)  Concluding that this Court's September 27 decision did not address Plaintiff's cold cell claim, the matter was remanded for further proceedings.  On remand, Plaintiff's previous counsel resumed Plaintiff's representation, but made no request to reopen discovery, unlike Defendants who moved to do so on January 21, 2010 for purposes of taking Plaintiff's deposition.  (Docket No. 124.)  Plaintiff thereafter, on March 28, 2010, asked that his present counsel be relieved and that the individual who had argued his appeal be appointed as new counsel. (Docket No. 127.)  In his motion, Plaintiff alleges that the attorney originally appointed him failed to take or procure photographs of Plaintiff's cell, did not conduct interviews with

8

inmate witnesses from neighboring cells, and did not maintain regular contact with him. (Docket No. 127.) Without responding to the substance of Plaintiff's allegations, this Court granted Plaintiff's motion on August 14, 2010. (Docket No. 128.) However, because Plaintiff's appellate counsel was neither admitted to practice before this Court nor maintained an office for legal practice in the Western District, and only handled *pro bono* Circuit Court appeals, this Court instead appointed counsel from the law firm of Jaeckle, Fleischmann & Mugel, LLP on September 10, 2010. (Docket No. 129.) Shortly thereafter, on December 8, 2010 Plaintiff counsel's departure from the firm necessitated replacing her with another attorney from the same firm. (Docket No. 137.)

It is relevant to note, that around this time, Defendants informed this Court that they did not intend to file any dispositive motions. (Docket No. 131.) Indeed, as late as February 18, 2011 Defendants' counsel reaffirmed that, should Plaintiff reject a then pending settlement offer, the case would proceed to trial. (Docket No. 141.) A month later, on March 15, 2011 Defendants reversed course stating that they would, in fact, file a partial motion for summary judgment to resolve some, but not all, of the outstanding issues. (Docket No. 144.) Defendants' filed their Motion for Summary Judgment seeking dismissal of Plaintiff's remaining claim in its entirety on May 11, 2011. (Docket No. 147.)

Given this extensive and convoluted record, it is not obvious to this Court that Plaintiff has had a full opportunity to depose Defendants and further explore their respective mental states as to Plaintiff's cold cell claim following the Appellate Court's remand. Plaintiff's most recent counsel has represented him during a period of time when it largely appeared that no new motion for summary judgment would be filed and this case would either settle or proceed to trial. When that changed, Plaintiff was under the

understandable misapprehension, as was this Court, that the ensuing motion would be one for only partial summary judgment. As a result, Plaintiff's failure to engage in the kind of discovery he now seeks is understandable, and excusable. See Meloff v. N.Y. Life Ins. Co., 51 F.3d 372, 375 (2d Cir. 1995) (noting that district court was over-hasty in granting summary judgment where plaintiff "received necessary responses to her interrogatories so close to the date of filing opposition papers . . . that she could hardly have had time to digest either the documentation she was supplied or the answers to the interrogatories, much less to take depositions").

Accordingly, Plaintiff's request for additional documentary discovery and the opportunity to take depositions will be granted. Nevertheless, as discussed below, in light of Plaintiff's deposition testimony, various Defendants should be dismissed from this action.

**D.    Defendant's Motion for Summary Judgment**

"[S]ummary judgment should only be granted if *after discovery*, the nonmoving party has failed to make a sufficient showing of an essential element of its case with respect to which it has the burden of proof." Miller v. Wolpoff & Abramson, LLP., 321 F.3d 292, 303 (2d Cir. 2003) (internal quotation marks omitted) (emphasis in original). However, additional discovery is only warranted where it would be "material to the opposition of the summary judgment motion." Sage Realty Corp. v. Ins. Co. of N. Am., 34 F.3d 124, 128 (2d Cir. 1994). Plaintiff's amended complaint names 25 defendants. Of these, 20 remain following this Court's Decision and Order dated September 1, 2005 (Docket No. 75). Although, as discussed above, Plaintiff is entitled to further discovery as to some

Defendants, Plaintiff's own deposition testimony reveals that several of the remaining 20 Defendants are not relevant to his cold cell claim, the only remaining claim of his Amended Complaint. Having dismissed all of Plaintiff's other claims, those Defendants whose only involvement in this case was based on those dismissed claims can be terminated as parties.

Plaintiff, during deposition, conceded that several Defendants were unrelated to his cold cell claim. This precludes Plaintiff from showing that these Defendants "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety" and therefore prevents Defendant from meeting the subjective prong of a conditions of confinement claim. Branham v. Meachum, 77 F.3d 626, 630-31 (2d Cir. 1996) (quoting Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994)) (alterations in original). Among these Defendants is Nurse Goodman who was "not directly responsible for my cold cell" because although she allegedly could have changed his conditions, "she didn't see me during that time, so I don't really think she's responsible." (Ifill Dep. 28:8-15.) Similarly, Nurse Nancy O'Connor was also not responsible. (Ifill Dep. 27:7-9.) Plaintiff believed Physician's Assistant ("PA") Robert Macomber was not "responsible for the problem because I do remember that he made a report to them that there's a problem in my cell." (Ifill Dep. 18:10-17.) Although Macomber allegedly authorized the improper removal of Plaintiff's wheelchair, exacerbating the coldness of the cell by forcing Plaintiff to lie on the floor, this Court has previously granted summary judgment as to that claim and that decision has not been vacated on appeal. Accordingly, Plaintiff's cold cell claim as against Macomber is also properly dismissed.

Plaintiff's claim against Dr. Walker must also be dismissed. According to Plaintiff,

11

Dr. Walker instructed the other Defendants to remove Plaintiff from those conditions and "didn't really do anything to me, as far as being responsible for those conditions." (Ifill Dep. 26:11-20.) Based on this, it appears that Dr. Walker actually sought to aid Plaintiff, and must be dismissed as a Defendant. For similar reasons, PA Robert Thornton actively aided Plaintiff and thus did not have the necessary intent to be held liable. (Ifill Dep. 16:10-21.)

Plaintiff also admitted that most of the COs named in his Amended Complaint were not responsible or involved in confining him naked in a freezing cell. Among these, Plaintiff stated that CO Battisti "doesn't really have anything to do with any of this stuff," referring to his cold cell claim. (Ifill Dep. 24:17-25:7.) Likewise, CO Bower was "not responsible for that." (Ifill Dep. 20:23-21:3.) As to CO Contrello Plaintiff stated "I don't think he was responsible for anything . . . . I think I had him down for some other reason in the civil action." (Ifill Dep. 28:22-29:7.) CO Reed "got nothing to do with freezing cold cells or nothing like that, there." (Ifill Dep. 25:8-18.) CO Jeff Scranton was also "not responsible." (Ifill Dep. 20:16-22.)[4]

Therefore, Defendants' Motion for Summary Judgment as to Defendants Battisti, Bower, Contrello, Goodman, Macomber, O'Connor, Reed, Scranton, Thornton, and Walker will be granted. This Court previously dismissed Plaintiff's claim against Defendants Belliner, Coleman, Goord, Poole, and Wright. (Docket No. 63.) Accordingly, the only remaining Defendants' in this matter are Defendants Cioffa, Conroy, Gould, Lape,

---

[4] Plaintiff states that he is unsure which three or four COs were responsible for taking him out of his wheelchair and put him in SHU. However, Plaintiff's statements in regards to the COs addressed above are unambiguous and show Plaintiff explicitly disclaiming fault by these COs as to his cold cell claim. Accordingly, this Court finds that the Defendants discussed above are properly dismissed.

12

Van Horn, Woodward, and Yorge.

**E.      Remaining Issues**

In addition to arguing that their motion should succeed as to each Defendant individually, Defendants also contend that their motion should be granted collectively because Plaintiff has failed to meet the objective prong of his claim. Defendants point out that the time period of Plaintiff's claim extends from September 2002 to February or March 2003 and that the temperature could not have been freezing for the entire duration of this time. (Defs.' Mem. 8.) Defendants also argue that Plaintiff's claim is countered by the fact that no other inmates complained about the temperature and submitted the Declaration of Jeffrey Minnerly, plant superintendent for Five Points, indicating that no temperature-related complaints were received by him during the relevant period. (Defs.' Mem. 9; Declaration of Jeffrey Minnerly, Jan. 19, 2010, Docket No. 148.) The Court also notes that Plaintiff's deposition shows that he could not say whether the water in the toilet was frozen or whether the windows were frosted over. (9:19-10:6.)

However, Plaintiff's affidavit makes clear that he is not merely alleging a cold cell, but that he was left in it without clothing. Plaintiff also described how a window opposite his cell was opened, the vent responsible for blowing out hot air actually blew out cold air, and how the recreation yard door would be left open, permitting rain water and snow to enter his cell. Finally, as already noted, further discovery may reveal additional details regarding the cell's conditions. This Court concludes that the facts alleged and supported by Plaintiff's deposition testimony and affidavit are sufficiently similar to other cold cell cases resulting in favorable determinations for plaintiffs such that granting Defendants' Motion for Summary Judgment on this ground would be inappropriate. See, e.g., Gaston,

249 F.3d at 164 (summary judgment precluded where prisoners subjected to near or below freezing temperatures for five-month period); Corselli v. Coughlin, 842 F.2d 23, 27 (2d Cir. 1988) (reversing grant of summary judgment where plaintiff exposed to bitterly cold temperatures for three months); Tapp v. Taylor, No. 05-CV-1442 (LEK/DRH), 2008 WL 4415158, at *3 n. 8 (N.D.N.Y. Sept. 24, 2008) (report and recommendation) ("Based upon [plaintiff]'s allegations of being intentionally placed into a cold cell, naked, and without heat, water, food, or a mattress, there is no question that he has successfully alleged facts sufficient to constitute an Eighth Amendment claim."); Moore v. Gardner, 199 F. Supp. 2d 17, 38 (W.D.N.Y. 2002) (denying summary judgment where plaintiff kept in cold drafty cell without bed sheets for three weeks); Maguire v. Coughlin, 901 F. Supp. 101, 104-05 (N.D.N.Y. 1995) (denying summary judgment where plaintiff confined in cold cell without bed linens).

Accordingly, Defendants' Motion for Summary Judgment will not be granted on Defendants' argument that Plaintiff cannot satisfy the objective requirement of an Eighth Amendment violation.

## IV.  CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is granted as to Defendants Battisti, Bower, Contrello, Goodman, Macomber, O'Connor, Reed, Scranton, Thornton, and Walker.  Defendants' motion is denied as to Defendants Cioffa, Conroy, Gould, Lape, Van Horn, Woodward, and Yorge.

## V.  ORDERS

IT HEREBY IS ORDERED, that Defendants' Motion for Summary Judgment (Docket No. 147) is GRANTED in part and DENIED in part.

FURTHER, that Defendants Battisti, Bower, Contrello, Goodman, Macomber, O'Connor, Reed, Scranton, Thornton, and Walker shall be terminated as parties to this case.

FURTHER, the parties are instructed to contact Magistrate Judge Leslie G. Foschio to set up a status conference and discuss discovery scheduling.

FURTHER, that discovery is extended only to accommodate the production of documents and deposition of witnesses related to Plaintiff's cold cell claim.

SO ORDERED.


Dated:      January 16, 2012
             Buffalo, New York

                                         /s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                        Chief Judge
                                        United States District Court